**Docket No. 17-55944**

_____

_____

IN THE

## UNITED STATES CIRCUIT COURT OF APPEALS

FOR THE

## NINTH CIRCUIT

_____

FRESHTA Y. NAYAB

Plaintiff – Appellant,

v.

CAPITAL ONE BANK (USA), N.A.

Defendant – Appellee.

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

Case No. 3:16-cv-03111-CAB-MDD – Honorable Cathy Ann Bencivengo

_____

### APPELLANT'S REPLY BRIEF

_____

Alex Asil Mashiri, Esq.
**MASHIRI LAW FIRM**
A Professional Corporation
11251 Rancho Carmel Dr. #500694
San Diego, CA 92150
Tel: (858) 348-4938
Fax: (858) 348-4939
Attorney for Appellant

Tamim Jami, Esq.
**THE JAMI LAW FIRM P.C.**
3525 Del Mar Heights Rd #941
San Diego, CA 92130
Tel: (858) 284-0248
Fax: (858) 284-0977
Attorney for Appellant

# TABLE OF CONTENTS

**PAGE(S)**

TABLE OF AUTHORITIES……………………………………...……....……iii

I.  INTRODUCTION……………………………………....................……...1

II.  ARGUMENT………………………………………....................……2

    A.  Nayab Has Article III Standing.............................................................2

        1.  Standing Does Not Depend on the Sufficiency of a Cause of Action.........................................................................................4

        2.  Nayab's Invasion of Privacy Has Historical Predicate................5

        3.  Nayab's Invasion of Privacy is a Harm Identified by Congress...9

    B.  Nayab Sufficiently Stated A Claim Under 15 U.S.C. Section 1681b(f)...............................................................................................12

        1.  Nayab Did Not Waive the Burden of Proof Argument on Appeal.......................................................................................12

        2.  The Burden to Prove A Permissible Purpose Is On Capital One...........................................................................................14

            a.  The Plain language of 15 U.S.C. section 1681b(f) Places the Burden of Proving the Statutory Exception on Capital One...............................................................................16

            b.  The Statutory Scheme Places the Burden of Proof on Capital One.................................................................17

                1. Congress Did Not Expressly Identify Every Affirmative Defense in the FCRA.............................17

                2. The FCRA's Legislative History Places the Burden of Proof on Capital One.................................................21

# TABLE OF CONTENTS (continue)

**PAGE(S)**

c.    Capital One's Policy Considerations Lack Merit............24

d.    The Word "Unless" in Section 1681b(f) Indicates That the Permissible Purpose Exception is Capital One's Affirmative Defense.......................................................26

e.    Capital One is the Party with Peculiar Knowledge As to Why It Obtained Nayab's Credit Report........................27

C.    Nayab's FAC Sufficiently Alleged An Impermissible Purpose...........29

III.    CONCLUSION……………………………………………………….30

IV.    CERTIFICATE OF COMPLIANCE……...…………………….…….31

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*Ballaris v. Wacker Siltronic Corp.,*
  370 F.3d 901 (9th Cir. 2004)...........................................................................13

*Bassett v. ABM Parking Services, Inc.,*
  883 F.3d 776 (9th Cir. 2018)..................................................................5, 6, 7

*BE & K Constr. Co. v. NLRB,*
  122 S.Ct. 2390 (2002).....................................................................................24

*Bell v. Hood,*
  327 U.S. 678 (1946)....................................................................................4, 5

*Bultemeyer v. CenturyLink, Inc.,*
  2017 WL 634516 (D. Ariz. Feb. 15, 2017).....................................................9

*Evankavitch v. Green Tree Servicing, LLC,*
  793 F.3d 355 (3d Cir. 2015)............................................................13, 14, 26

*Guimond v. Trans Union Credit Info. Co.,*
  45 F.3d 1329 (9th Cir. 1995).........................................................20, 21, 25

*Hockenberry v. United States,*
  422 F.2d 171 (9th Cir. 1970).........................................................................17

*La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.,*
  762 F.3d 867 (9th Cir. 2014)...........................................................................4

*Mashiri v. Epsten Grinnell & Howell,*
  845 F.3d 984 (9th Cir. 2017)...................................................................13, 14

*Meacham v. Knolls Atomic Power Lab.,*
  554 U.S. 84 (2008).................................................................................16, 17

*Orff v. United States,*
  358 F.3d 1137 (9th Cir.2004)..........................................................................5

## TABLE OF AUTHORITIES (continue)

PAGE(S)

**CASES**

*Safeco Ins. Co. of Am. v. Burr,*
  551 U.S. 47 (2007)........................................................................9

*Syed v. M-I, LLC,*
  853 F.3d 492 (9th Cir. 2017)................................................9, 10

*United States v. Missouri Pac. R.R.,*
  278 U.S. 269 (1929)....................................................................16

*United States v. Northrop Corp.,*
  59 F.3d 953 (9th Cir. 1995).......................................................13

*United States v. Safeway Stores, Inc.,*
  252 F.2d 99 (9th Cir. 1958)........................................................17

*Van Patten v. Vertical Fitness Group,*
  847 F.3d 1037 (9th Cir. 2017)......................................................8

*Whittaker Corp. v. Execuair Corp.,*
  953 F.2d 510 (9th Cir.1992)........................................................12

*Yamada v. Nobel Biocare Holding AG,*
  825 F.3d 536 (9th Cir. 2016)......................................................12

**FEDERAL STATUTES**

15 U.S.C. section 1681b.................................................................passim

15 U.S.C. section 1681b(a)(3)(A)......................................................29

15 U.S.C. section 1681b(b)(2)...........................................................10

15 U.S.C. section 1681b(c)..........................................................11, 29

15 U.S.C. section 1681b(c)(1)(B)......................................................11

# TABLE OF AUTHORITIES (continue)

**PAGE(S)**

## FEDERAL STATUTES

15 U.S.C. section 1681b(f)......................................................................passim

15 U.S.C. section 1681c-1...........................................................................18

15 U.S.C. section 1681c(g).............................................................................6

15 U.S.C. section 1681d.................................................................18, 19, 20

15 U.S.C. section 1681d(c)...........................................................18, 19, 20

15 U.S.C. section 1681e.................................................................................18

15 U.S.C. section 1681e(b).....................................................................20, 21

15 U.S.C. section 1681g(e)(10).............................................................17, 20

15 U.S.C. section 1681m(c).........................................................18, 19, 20

15 U.S.C. section 1681m(h)(7).....................................................18, 19, 20

15 U.S.C. section 1681n.................................................................................23

15 U.S.C. section 1681n(b).............................................................................23

## RULES

Federal Rules of Civil Procedure, Rule 11................................................24

## SENATE REPORT

S. REP. 104-185 (1995)...................................................................3, 22, 26

S. REP. 103-209 (1993).......................................................................22, 26

**TABLE OF AUTHORITIES** (continue)

<b>PAGE(S)</b>

**OTHER**

Restatement (Second) of Torts 652B (1977)...............................................................8

The Bluebook: A Uniform System of Citation R5.3(b)
(Columbia Law Review Ass'n et al. eds., 20th ed. 2015)........................................24

# I.    INTRODUCTION

Capital One Bank (USA), N.A. ("Capital One") makes two arguments. <u>First</u>, it argues that Freshta Nayab ("Nayab") lacks Article III standing because (1) Nayab failed to sufficiently allege a concrete injury, (2) Nayab's purported injury has no historical predicate, and (3) Congress did not intend to elevate Nayab's purported injury to a concrete injury.

However, Nayab's First Amended Complaint ("FAC") sufficiently alleged that Capital One invaded her right to privacy by obtaining her credit report on multiple occasions without a permissible purpose.  Further, Nayab's invasion of privacy injury has historical predicate because it has traditionally been regarded as providing a basis for lawsuit in English and American courts.  Finally, Nayab's invasion of privacy is a harm identified by Congress, and 15 U.S.C. section 1681b of the Fair Credit Reporting Act ("FCRA") was enacted to make this harm redressable.  Therefore, Nayab has Article III standing.

<u>Second</u>, Capital One argues that the burden of proof is on Nayab to show that Capital One impermissibly obtained her credit report under 15 U.S.C. section 1681b(f).  This argument is also incorrect because (1) the statutory exception benefits Capital One since it would escape liability under the statute's general prohibition, (2) Capital One is the party with peculiar knowledge as to why it obtained Nayab's credit report, and (3) as a matter of policy, placing the burden of

proof on Capital One is consistent with the remedial purpose of the FCRA.

Accordingly, the judgment should be reversed.

## II.    ARGUMENT

### A.    <u>Nayab Has Article III Standing</u>

Nayab has Article III standing because Capital One violated her right to privacy by obtaining her consumer credit report[1] numerous times without a permissible purpose.

In its brief, Capital One complicates the issue of standing by discussing many irrelevant points. Before Nayab addresses Capital One's arguments, it is important to take a step back and recognize the immediate implication of Capital One's proposition.

Capital One proposes that even if a consumer's credit report— which contains a myriad of private information including but not limited to social security number, date of birth, address, and employment information—is obtained *without* a permissible purpose, the consumer will have no standing to sue the offending party under the FCRA. In other words, Capital One's position is that anyone could obtain any consumers' credit report despite a permissible purpose because the consumer whose credit report was obtained would lack standing to sue since, without something more (*i.e.* actual damages) concrete injury is absent.

---

[1] Unless otherwise specified, all referenced to consumer report or credit report will mean consumer credit report as defined by the FCRA.

To get a better sense of Capital One's position, the Court need only imagine walking a mile in Nayab's shoes. Let us assume that Capital One, without any permissible purpose, obtains the consumer credit report on each of the three judges hearing this appeal. Let us further assume that none of the judges suffer actual damages. Based on Capital One's rationale, since neither of the judges suffered any actual damages there would be no concrete injury; thus neither judge has standing to sue Capital One under the FCRA despite the invasion of privacy.

By way of this example, the concrete harm becomes glaringly clear; that is, the invasion of privacy that results when a party obtains a consumer's report from a consumer reporting agency without a permissible purpose. Capital One hopes to undermine the entire purpose of 15 U.S.C. section 1681b[2]—a statute which was enacted to protect sensitive consumer information from unfettered access. *See* S. REP. 104-185, at 18 (1995) ("the chief concerns that are implicated by the FCRA are: […] 2. the privacy concerns raised by unfettered access to consumers reports […]").

To make matters worse, adopting Capital One's rationale would also foreclose any other form of redress a consumer may have against the offending party. This is because the consumer would be unable to sue under the common law invasion of privacy since this claim is preempted by the FCRA. AOB 19.

---

[2] Unless otherwise specified, all further statutory references are to the Fair Credit Report Act, 15 U.S.C. § 1681.

Moving on to Capital One's main argument; Capital One contends that Nayab lacks Article III standing because (1) Nayab failed to sufficiently allege a claim under section 1681b(f), (2) Nayab's purported injury has no historical predicate, and (3) Congress did not intend to elevate Nayab's purported injury to a concrete injury. AB 9.

As discussed below, Capital One is mistaken.

## 1. Standing Does Not Depend on the Sufficiency of a Cause of Action

Nayab's FAC alleges that Capital One invaded her privacy by obtaining her credit reports, which contain a myriad of sensitive personal information, without a permissible purpose in violation of section 1681b(f). ER 81-82.

Curiously, Capital One takes the position that in order for Nayab to sufficiently allege standing, she must sufficiently allege a violation of section 1681b(f). But Capital One is conflating the requirement for standing with the requirement for establishing a cause of action under section 1681b. As this Court pointed out, "the Supreme Court has distinguished jurisdictional requirements from those required to establish a cause of action." *La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867, 873 (9th Cir. 2014) citing *Bell v. Hood*, 327 U.S. 678 (1946). The Supreme Court in *Bell* stated the following:

> Whether the complaint states a cause of action on which relief could be granted is a question of law and … it must be decided after and not before the court has assumed jurisdiction over the controversy. If the court does later exercise its jurisdiction to determine that the allegations in the complaint do

not state a ground for relief, then dismissal of the case would be on the merits, not for want of jurisdiction.

The holding in *Bell* was that "the nonexistence of a cause of action was no proper basis for a jurisdictional dismissal." *Orff v. United States*, 358 F.3d 1137, 1150 (9th Cir.2004). Therefore, contrary to Capital One's position, Nayab is not required to sufficiently allege a violation of section 1681b(f) in order to sufficiently allege standing.

Even assuming Nayab is required to allege sufficient facts to state a claim under section 1681b(f) in order to satisfy standing, Nayab satisfied this requirement because her FAC sufficiently alleges a claim under section 1681b(f) as discussed in *supra* Section B.

## 2. Nayab's Invasion of Privacy Has Historical Predicate

Nayab's invasion of privacy injury has historical predicate because it has traditionally been regarded as providing a basis for lawsuit in English and American courts. AOB 16-17.

Capital One contends that there is no historical predicate. Relying on *Bassett v. ABM Parking Services, Inc.*, 883 F.3d 776 (9th Cir. 2018), Capital One states that the "mere access of a credit report, without more 'does not have a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts.'" AB 20.

But Capital One cherry-picks[3] and then misconstrues the decision in *Bassett*. Despite being both legally and factually different from this case, in *Bassett*, the plaintiff voluntarily provided defendant ABM Parking ("ABM") with his credit card in order to pay for parking. The plaintiff received a receipt from ABM bearing his credit card expiration date and subsequently filed a lawsuit under section 1681c(g), claiming that the disclosure of his credit card expiration date would expose him to identity theft and credit/debt fraud "because he was at 'imminent risk that his property would be stolen and/or misused by identity thieves.'" *Bassett,* 883 F.3d at 778. The plaintiff had *not* alleged that his credit card receipt had actually been lost or stolen nor that he was a victim of identity theft. *Id.*

Affirming the district court's holding that there was no standing, this Court concluded that there was no historical predicate because the plaintiff's "claimed 'exposure' to identity theft—caused by ABM's printing of his credit card expiration date on a receipt that he alone viewed—does not have 'close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English and American courts.'" *Id.* at 780.

Ultimately, this Court rejected the plaintiff's argument that the alleged harm

---

[3] Artfully, Capital One conflates its ultimate position with the Ninth Circuit's holding to provide the following rhetoric: "mere access of a credit report, without more '*does not have a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts.*'"

has a historical relationship to the right of privacy, because he had not alleged that his information was disclosed to a third party. *Id.*

There is a fundamental difference between *Bassett* and this case. In *Bassett*, the plaintiff voluntarily provided his private information—credit card information—to ABM. The plaintiff did not argue that ABM invaded his right to privacy by obtaining his credit card information. Nor could he, since he voluntarily provided that information to ABM. Instead, the plaintiff argued that since his expiration date was on the receipt, the information could fall into the hands of a third party (e.g. thief). But since there was no evidence that the receipt, which contained the private information, was disclosed to anyone other than the plaintiff, there was no invasion of privacy.[4] *Id.*

In this case, however, Nayab alleged that Capital One obtained her credit report without a permissible purpose. So unlike the plaintiff in *Bassett* who voluntarily provided his private credit card information to ABM, Nayab alleged that she did not voluntarily provide her credit reports to Capital One, nor did Capital One have any permissible purpose to obtain her credit reports. To be clear, Nayab is not contending that Capital One unlawfully disclosed Nayab's credit report to a third party. Rather, it is the act—by Capital One—of obtaining Nayab's credit report from

---

[4] The plaintiff in *Bassett* may have had standing if ABM provided his private information, without his consent, to a third party.

Experian without a permissible purpose that resulted in an invasion of Nayab's right to privacy.

Notably, one particular form of invasion of privacy at common law is intrusion upon seclusion. Intrusion upon seclusion occurs when a person "intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns." Restatement (Second) of Torts 652B (1977). The person intruding, "is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." *Id.*

As expected, disclosure to a third party is not a requisite element of an intrusion upon seclusion claim. *See* Restatement (Second) of Torts 652B (1977) Comment Section (an intrusion upon seclusion "does not depend upon any publicity given to the person whose interest is invaded or to his affairs."). Hence, disclosure to a third party is not a requisite for a common law invasion of privacy claim.

To the extent Capital One suggests that the holding in *Bassett* stands for the proposition that the right of privacy has no historical predicate, this is inconsistent with this Court's precedent specifically acknowledging that a violation of the right to privacy has long been actionable at common law. *Van Patten v. Vertical Fitness Group*, 847 F.3d 1037, 1043 (9th Cir. 2017).

Accordingly, Capital One's argument must be rejected.

### 3. Nayab's Invasion of Privacy is a Harm Identified by Congress

Congress enacted section 1681b of the FCRA to prevent any person from obtaining a consumer report unless they have a permissible purpose. Section 1681b identifies a substantive right to privacy that guards against unfettered access to a consumer's credit report. A violation of section 1681b(f) presents the precise harm Congress sought to protect consumers against when enacting the FCRA. AOB 17-21.

Yet, Capital One takes the position that Congress did not intend to make an invasion of privacy redressable when it enacted section 1681b. In support, Capital One makes three arguments.

First, citing to *Bultemeyer v. CenturyLink, Inc.,* 2017 WL 634516 (D. Ariz. Feb. 15, 2017), Capital One takes the position that because the FCRA's primary goal was *not* to protect consumer privacy, section 1681b does not provide a substantive right to privacy.

However, the holding in *Bultemeyer* contradicts well established precedent from the Supreme Court and this Court which both recognize that the FCRA was enacted to protect the privacy of consumers. *Safeco Ins. Co. of Am. v. Burr,* 551 U.S. 47, 52 (2007); *Syed v. M-I, LLC*, 853 F.3d 492 (9th Cir. 2017). Therefore, *Bultemeyer* is of no help to Capital One.

Second, Capital One contends that this Court's decision in *Syed*, 853 F.3d at

496 is inapposite.  In a desperate attempt to distinguish *Syed* from this case, Capital One argues that this court found standing in *Syed* because the plaintiff sufficiently alleged that the information contained in the waiver was an insufficient disclosure by the employer.  AB 16.

However, Capital One conveniently left out salient portions of the opinion.  In particular, this Court specifically stated that one of Congress' overarching purposes in enacting the FCRA was to ensure the protection of consumers' privacy. *Syed,* 853 F.3d at 496-97.  Not to mention, the opinion opened by stating "[t]he modern information age has shined a spotlight on information privacy, and on the widespread use of consumer credit reports to collect information in violation of consumers' privacy rights." *Id*. at 492.

This Court went on to hold that plaintiff's allegations were sufficient to infer he was deprived of the right to privacy guaranteed by section 1681b(b)(2), ultimately concluding this was sufficient to allege standing under the statute. *Id*. at 499-501.

It is beyond genuine dispute, the purpose of section 1681b is to ensure that a consumer report is kept private and only obtained when there is a permissible purpose.  Absent a permissible purpose, the offending party is liable for invading a consumer's right to privacy.

Certainly, an invasion of privacy is a harm identified by Congress and section 1681b was enacted to make this harm redressable.  Thus, Nayab has standing.

Finally, citing to a Senate Report, Capital One states that the FCRA permits the use of credit reports for direct marketing and/or prescreening regardless of whether the credit inquiry was triggered by a consumer transaction. Capital One goes on to state that "creditors like Capital One obtain and review consumers [sic] credit information on a regular basis." AB 12.

It remains a mystery why Capital One raises this issue in its brief. Nayab does not dispute that creditors may obtain someone's credit report for direct marketing and/or prescreening purposes—indeed, both are permissible purposes under section 1681b. *See* 15 U.S.C. § 1681b(c)(1)(B). To be sure, Nayab's FAC alleged that Capital One obtained her credit report on multiple occasions *without* meeting any permissible purpose under section 1681b—this includes section 1681b(c)(1)(B). ER 82.

Perhaps Capital One is suggesting that it had a permissible purpose to obtain Nayab's report for direct marketing or prescreening purposes under section 1681b(c). However, Capital One had ample opportunity to apprise Nayab of any such permissible purposes before filing its motion to dismiss. Instead, the case was dismissed at the pleading stage without any opportunity for Nayab to conduct discovery. Ultimately, whether Capital One had a permissible purpose under section

1681b is an issue[5] that needs to be decided before the district court, not in this appeal.

## B. Nayab Sufficiently Stated A Claim Under 15 U.S.C. Section 1681b(f)

### 1. Nayab Did Not Waive the Burden of Proof Argument on Appeal

Capital One contends that Nayab waived the issue as to who bears the burden to prove the statutory exception because she raised this issue for the first time on appeal. AB 26-28. Not so.

To be sure, an appellate court will generally not hear an issue raised for the first time on appeal. *Whittaker Corp. v. Execuair Corp*., 953 F.2d 510, 515 (9th Cir.1992).

However, there is no waiver if the issue was raised, the party took a position, and the district court ruled on it. *Yamada v. Nobel Biocare Holding AG*, 825 F.3d 536, 543 (9th Cir. 2016) ("when a party takes a position and the district court rules on it, there is no waiver.").

Here, Nayab raised the issue—that Capital One bears the burden of establishing a permissible purpose for obtaining her credit report since it is an affirmative defense—in the district court. ER 39-40. Capital One addressed this issue. ER 17-18. And the district court acknowledged and ruled on this issue by stating the following:

---

[5] This issue was not before the district court, nor is there any evidence in the record before this Court supporting Capital One's position that it had a permissible purpose.

In her opposition, Nayab even contends that she need only allege that her credit report was accessed, with the burden on Capital One to prove as an affirmative defense that it had a permissible purpose for obtaining her report. Nayab offers no authority for this burden shifting argument, and the Court rejects it. Because the burden is on Nayab to prove that Capital One accessed her credit report for an impermissible purpose, she must allege facts that would demonstrate that Capital One's purpose was not permissible.

ER 9.

Indeed, the issue was raised by Nayab, addressed by Capital One, and ruled on by the district court. Accordingly, the issue is not waived.

To the extent Capital One contends that Nayab waived this issue because she did not cite a specific case in support of her argument, this too must be rejected. When a question presented is one of law, this Court will consider "all relevant authority, regardless of whether such authority was properly presented in the district court." *Ballaris v. Wacker Siltronic Corp*., 370 F.3d 901, 908 (9th Cir. 2004).

While Nayab did not cite to *Evankavitch v. Green Tree Servicing, LLC*, 793 F.3d 355 (3d Cir. 2015) in her opposition to Capital One's motion to dismiss, this Court can still consider it. *Ballaris,* 370 F.3d at 908.

Furthermore, this Court has discretion to consider issues raised for the first time on appeal. *United States v. Northrop Corp*., 59 F.3d 953, 957 n. 2 (9th Cir. 1995). This Court has used its discretion to consider an issue for the first time on appeal where the issue was purely legal and the opposing party was not prejudiced by the party's failure to raise the issue in the district court. *Mashiri v. Epsten Grinnell*

-13-

*& Howell*, 845 F.3d 984, 988-989 (9th Cir. 2017).

Accordingly, even if Nayab failed to properly raise this argument in the district court—something Nayab emphatically disputes—Capital One addressed the issue of who bears the burden at length in its brief.

Therefore, Capital One will suffer no prejudice[6] if this Court considers the issue.

**2.     The Burden to Prove A Permissible Purpose Is On Capital One**

When a statute is silent as to who bears the burden of proof, courts look beyond the default rule. AOB 29.  To determine who bears the burden on proof, courts take into consideration the following:  (1) whether the defense is framed as an exception to the statute's general prohibition or an element of a prima facie case; (2) whether the statute's general structure and scheme indicate where the burden should fall; (3) whether a party is in particular control of information necessary to prove or disprove the defense; and (4) other policy or fairness considerations. *See e.g. Evankavitch,* 793 F.3d at 361.[7]

---

[6] Capital One states no facts as to how it would be prejudiced if this Court considers the issue of burden on appeal.

[7] Capital One takes issue with Nayab's reliance on the legal maxims laid out in *Evankavitch*, contending that it is factually distinguishable because it involved a different federal statute (FDCPA).  However, Nayab never argued that *Evankavitch* was factually similar.  Instead, Nayab cited to *Evankavitch* for its proposition that a court must look beyond the default rule—that the plaintiff bears the burden of proof—when the statute and legislative intent are silent as to the burden.

The statute in question—section 1681b(f)—provides the following: "A person shall not use or obtain a consumer report for any purpose *unless*–(1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and (2) the purpose is certified in accordance with section 1681e of this title by a prospective user of the report through a general or specific certification."

Nayab argued in her opening brief that the burden to prove a permissible purpose is on Capital One because: (1) the statutory exception in section 1681b(f) benefits Capital One since it would escape liability; (2) Capital One is the party with peculiar knowledge as to why it obtained Nayab's credit report; and (3) as a matter of policy, placing the burden on Capital One to prove the statutory exception applies is consistent with the remedial purpose of the FCRA. AOB 27-38.

Capital One refutes this by arguing (a) that the plain language of section 1681b(f) places the burden of proof on Nayab; (b) that the statutory scheme (*e.g.* legislative history and intent) support the conclusion that the burden is on Nayab; (c) that key policy considerations of the FCRA support its position; (d) that the word "unless" in section 1681b(f) does not shift the burden to Capital One; and (e) that Nayab's peculiar knowledge[8] argument is meritless.

_____

[8] In its brief, Capital One refers to peculiar knowledge as "superior access."

    a.    **The Plain language of 15 U.S.C. section 1681b(f) Places the Burden of Proving the Statutory Exception on Capital One**

Concluding without explaining, Capital One takes the position that the plain language of section 1681b(f) places the burden of proof on Nayab. AB 28-29. The "plain-meaning rule" requires that if the words of a statute are clear, and the construction of those words will not lead to an absurd result, the words are assumed to be the "final expression of the meaning intended." *United States v. Missouri Pac. R.R.*, 278 U.S. 269, 277-78 (1929).

Capital One does not explain how the plain meaning of section 1681b(f) supports the conclusion that Nayab bears the burden of proof. A closer look at the statute actually supports Nayab's position that Capital One must prove it met the permissible purpose exception. Section 1681b(f) states that "[a] person shall not use or obtain a consumer report for any purpose unless—......" The statute's plain meaning prohibits the use of or obtaining a consumer report. This is all that is required to make out a prima facie case.

What follows by way of the "unless" proviso in section 1681b(f) is an exception to the statute's general prohibition.[9] "The burden of proving justification or exemption under a special exception to the prohibitions of a statute generally rests on one who claims its benefits" —here, that would be Capital One. *Meacham v.*

---

[9] Dictionary.com defines "*unless*" as "except under the circumstances that." *See* http://www.dictionary.com/browse/unless.

*Knolls Atomic Power Lab.*, 554 U.S. 84, 91–92 (2008).

To expect Nayab to disprove that Capital One had a permissible purpose—proving a negative—is contrary to this Court's precedent. *Hockenberry v. United States*, 422 F.2d 171, 173 (9th Cir. 1970) ("By a rule of long standing, an indictment or other pleading founded on a general provision defining the elements of an offense, or of a right conferred, need not negative the matter of an exception made by a proviso or other distinct clause, whether in the same section or elsewhere, and it is incumbent on one who relies on such an exception to set it up and establish it.") (internal citations omitted); *see also United States v. Safeway Stores, Inc.*, 252 F.2d 99, 101 (9th Cir. 1958).

Although the inquiry could stop here, for the sake of discussion, Nayab will address Capital One's remaining arguments.

### b. The Statutory Scheme Places the Burden of Proof on Capital One

#### 1. Congress Did Not Expressly Identify Every Affirmative Defense in the FCRA

Capital One contends that Congress expressly used the phrase "affirmative defense" in a different FCRA statute—section 1681g(e)(10)—and that by not doing so in section 1681b, Congress' intent is clear that the burden to prove both that Capital One obtained her credit report and that Capital One did so without a permissible purpose is on Nayab. AB 29.

At best, all we have from Capital One is specious reasoning. On the one hand,

Capital One recognizes that there are other FCRA statutes—sections 1681m(c), 1681m(h)(7), and 1681d(c)—which provide for an affirmative defense. On the other hand, neither of these statues expressly use the phrase "affirmative defense."

Accordingly, just because Congress did not expressly use the word "affirmative defense" when drafting the exception to section 1681b(f), does not mean it intended to place the burden of both the statute and its exception on the plaintiff.[10]

Capital One takes the alternative position that Congress knew how to shift the burden of proof to a defendant elsewhere in the FCRA when it chose not to use the express "affirmative defense" language. *See* 15 U.S.C. §§ 1681m(c), 1681m(h)(7), 1681d(c). In using parenthetical quotations to emphasize its point, Capital One suggests that Congress created an affirmative defense only where it used the terms "preponderance of the evidence" and/or some form of "[n]o person shall be held liable" in the statute. From there, Capital One contends that by not doing so in section 1681b(f), Congress intended the burden of proof to be on the plaintiff. AB 29. This argument is problematic for at least two reasons.

---

[10] A cursory review of the FCRA indicates that the word "unless" is used well over a dozen times to signify an exception to a general prohibition, yet the phrase "affirmative defense" is nowhere to be found in these same statutes. *See* §§ 1681b, 1681c-1, 1681d, 1681e. Notably, only section 1681(g)(e)(10) of the entire FCRA uses "affirmative defense," and even then, it is narrowly limited to subsection (e) of section 1681(g).

First, each statute identified—sections 1681m(c), 1681m(h)(7), and 1681d(c)—is a bona fide error defense, which is simply a type of affirmative defense. These specific statutes express Congress' intent that an offending party may escape liability under certain sections of the FCRA so long as the offending party can prove it maintained reasonable procedures to ensure conformity with the statute in question. Conceivably, the language Capital One suggests as being dispositive may simply amount to nothing more than ordinary language used by Congress to identify a bona fide error—type—affirmative defense in a statute.

As a result, the fact that Congress did *not* use "preponderance of the evidence" and/or some form of "[n]o person shall be held liable" in section 1681b(f) does nothing to suggest that the burden of proving the exception is on Nayab.

An affirmative defense is *not* one size fits all. Indeed, one need look no further then to the vast civil and criminal laws of this nation to recognize that affirmative defenses comes in all shapes and sizes. In fact, a review of the FCRA proves that some statutes appear to have more than one type of affirmative defense. Section 1681d appears to include both an exception to the statute's general prohibition (similar to that in section 1681b(f)) and a bona fide error exception.

Subsection (a) of section 1681d provides that a person "may not procure or cause to be prepared an investigative consumer report on any consumer unless—…" Additionally, Congress codified subsection (c) of section 1681d which provides the

-19-

offending party an opportunity to escape liability under subsection (a) or (b) of section 1681d regardless of whether the offending party can meet the exceptions to the general prohibition laid out in subsection (a). That is, an offending party can still escape liability for violating the general prohibition of subsection (a) if it satisfies the bona fide error defense under subsection (c).

Conceivably, by *not* providing a bona fide error defense in section 1681b like it did in section 1681d, Congress aimed to ensure that a person who obtained a consumer's report met a permissible purpose without regard to whether they maintained reasonable procedures—perhaps a more rigid requirement because of the sensitive information at stake.

Second, Capital One's argument that Congress intended no other statute in the FCRA to be an affirmative defense—other than sections 1681g(e)(10), 1681m(c), 1681m(h)(7), and 1681d(c)—is also inconsistent with this Court's precedent. *See Guimond v. TransUnion*, 45 F.3d 1329 (9th Cir. 1995).

In *Guimond,* a consumer sued Trans Union alleging that it violated, among other laws, section 1681e(b) when it failed to correct inaccurate information in her credit report. *Guimond,* 45 F.3d at 1334. 15 U.S.C. section 1681e(b) states:

> Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

In examining this statute, this Court concluded that in order to make out a

prima facie case under section 1681e(b), a plaintiff need only show inaccuracies in her credit report. Id. at 1333. Once that is established, the credit reporting agency can escape liability if it can show that it had followed the reasonable procedures in place to ensure accuracy. *Id.*

Even though section 1681e(b) did not expressly indicate that it was an "affirmative defense" nor consist of the language Capital One alluded to as being dispositive,[11] this Court placed the burden of proving the exception on the offending party. *Id.*

In reflecting upon *Guimond*, it becomes apparent that the language in section 1681b(f) provides an even more compelling argument that the burden of proving the exception lies with Capital One. Unlike section 1681e(b), section 1681b(f) specifically states that "[a] person shall not use or obtain a consumer report for any purpose *unless*...." The statute's proscription could be no clearer. A claim arises as soon as a person obtains a consumer's report, and disappears only upon the showing of a permissible purpose.

### 2. The FCRA's Legislative History Places the Burden of Proof on Capital One

As far as the legislative history is concerned, all we have from Capital One is a brilliant sample of circular reasoning. Big on sound bites yet thin on legislative

---

[11] Capital One alluded to the use of "preponderance of the evidence" and/or some form of "[n]o person shall be held liable" as being dispositive indicators.

analysis, Capital One simply cites to select sections of a Senate Committee Report in hopes of lending credence to its otherwise conclusory and intentionally obscure arguments.

Capital One reaches its conclusion—Nayab bears the burden of disproving a permissible purpose existed—by simply reciting the obvious. Two pages of writing from Capital One can be summed up in one sentence: Congress identified various permissible purposes that justify access to a consumer credit report. AB 30-32.

Again, Nayab does not dispute the fact that Congress (1) identified various permissible purposes, and (2) believed that a general certification of a permissible purpose would satisfy the requirements codified in paragraph 2 of section 1681b(f). Capital One provides nothing to explain how the legislative history supports its position.

Notably, Capital One overlooks the Senate Committee Report's recognition that a user's permissible purpose is an affirmative obligation. *See* S. REP. 104-185, at 39; S. REP. 103-209, at 12 ("By providing an affirmative obligation for users to have a permissible purpose, the Committee intends to provide the FTC, the state law enforcement authorities, and private citizens with recourse against those who unlawfully access consumer reports, regardless of whether or not the user acted under false pretenses."). Indeed, an affirmative obligation is a responsibility incumbent upon the user of a consumer report. As such, it only makes sense that the

-22-

exception to section 1681b(f) would be an affirmative defense for Capital One.

Finally, in an attempt to undermine Nayab's position that liability is created as soon as a credit report is obtained, Capital One provides a hypothetical that not only cites to the wrong statute but also misquotes it. AB 32.

Capital One begins by purporting to cite to 15 U.S.C. section 1681n as follows:

> "[a]ny person who obtains a consumer report from a consumer reporting agency under false pretenses or knowingly without a permissible purpose shall be liable. 15 U.S.C. § 1681n."

Yet, Capital One is specifically citing to subsection (b) of section 1681n. This subsection concerns a person's liability to the *consumer reporting agency*, _not_ a person's liability to the *consumer*. The liability statute at issue in Nayab's claim is subsection (a) of section 1681n, _not_ subsection (b) of section 1681n.

More troubling however; Capital One appears to have misquoted section 1681n(b) by leaving out the part that clearly identifies the subsection's limited application to a consumer reporting agency. The statute Capital One quoted—15 U.S.C. section 1681n(b)—actually states:

> "Any person who obtains a consumer report from a consumer reporting agency under false pretenses or knowingly without a permissible purpose shall be liable ***to the consumer reporting agency for actual damages sustained by the consumer reporting agency or $1,000, whichever is greater***."

It is clear that Capital One omitted the bold italicized language just to lend

credence to its meritless argument.[12]  Accordingly, the Court should disregard Capital One's argument—whatever it may be.

### c.  Capital One's Policy Considerations Lack Merit

Capital One did not address Nayab's policy argument that the person obtaining the credit report should bear the burden of proof.  Instead, Capital One insists that placing the burden of proof on the person obtaining the credit report would cast open the floodgates to litigation, the consequences of which would be a chilling effect on the credit industries prescreening activity.  Capital One engages in nothing more than the cheapest form of advocacy—fear-mongering.

First, Capital One's assertion—that placing the burden upon Capital One would open the floodgates to litigation—belabours the obvious.  The risk that some may abuse the system is no reason to deny justice altogether.  It is the touchstone of our Constitution that those seeking redress of grievance have access to the courts.  *BE & K Constr. Co. v. NLRB,* 122 S.Ct. 2390, 2396 (2002) (Recognizing that the right to petition the court is one of "the most precious of the liberties safeguarded by the Bill of Rights.").  But more importantly, procedures already exist to prevent meritless lawsuits. *See e.g.* Fed.R.Civ.P. 11.  Unless a plaintiff has a meritorious claim, she and her attorney could be subjected to sanctions for filing a frivolous

---

[12]  At minimum, Capital One should have indicated that it omitted statutory language by using ellipses (…). *See* The Bluebook: A Uniform System of Citation R5.3(b), at 78 (Columbia Law Review Ass'n et al. eds., 20th ed. 2015).

lawsuit.

Second, as if advocating for laissez-faire capitalism, Capital One warns that shifting the burden will lead to a chilling effect on credit activity in the industry. But Capital One is simply exaggerating a natural consequence of any form of government regulation. Currently, the FCRA is law—and by way of "congressional concern over abuses in the credit reporting industry" it was enacted "to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner." *Guimond,* 45 F.3d 1329 at 1333.

Section 1681b(f) assures consumers that users, like Capital One, will not have unfettered access to their consumer reports unless they have a permissible purpose under the FCRA. Accordingly, placing the burden on Capital One to prove it met the permissible purpose exception is the only way to ensure consumer credit information is not exploited and abused.

Third, the fact that Congress recognized the need to create a permissible purpose for prescreening and/or firm offers has no bearing on whether the burden should be placed with Nayab or Capital One. It is simply a permissible purpose Congress recognized, something Nayab does not dispute.

Finally, should a user, like Capital One, discover they had a permissible purpose, they could dispose of the entire case by simply moving the court by way of a motion to dismiss, motion for judgment on the pleadings, or motion for summary

judgment. For example, if the user obtained a consumer's credit report in order to pursue debt collection, the user, now defendant, could provide the permissible purpose in its answer, and immediately move for judgment on the pleadings and/or summary judgment.

> ### d. The Word "Unless" in Section 1681b(f) Indicates That the Permissible Purpose Exception is Capital One's Affirmative Defense

Capital One makes two arguments in support of its contention that the word "unless" does not place the burden of proving the exception on Capital One.

First, it tries to distinguish the holding in *Evankavitch* by arguing that this case involves a different statute. However, Nayab cited to *Evankavitch* for the proposition that a party who benefits from an exception in a statute bears the burden of proof. AOB 31. Here, Capital One benefits from the exception in section 1681b(f) by escaping liability.

Second, Capital One contends that the statutory scheme of the FCRA places the burden of proving the exception on Nayab. As explained above (*infra* Section B.2.b.), this argument is meritless. Furthermore, the Senate Committee Reports emphasize the fact that a user's permissible purpose is an affirmative obligation. *See* S. REP. 104-185, at 39; S. REP. 103-209, at 12 ("By providing an affirmative obligation for users to have a permissible purpose, the Committee intends to provide the FTC, the state law enforcement authorities, and private citizens with recourse

against those who unlawfully access consumer reports, regardless of whether or not the user acted under false pretenses.").

### e. Capital One is the Party with Peculiar Knowledge As to Why It Obtained Nayab's Credit Report

Capital One does not refute the general proposition that the party with peculiar knowledge must generally prove those facts. Instead, Capital One argues that "many of the facts" are not exclusively within the knowledge of a defendant. AB 38. In support of this argument, it provides a hypothetical between an employee and employer, in which an employee has enough knowledge to allege why her report was improperly obtained.

While a consumer may know the purpose behind a credit report inquiry in some instances, there are many instances, like in this case for example, where the consumer has no idea why her credit report was obtained. This is especially true when a consumer's report is being obtained for an impermissible purpose. And this make sense; this information—the purpose behind obtaining the report—is generally within the peculiar knowledge of the party who obtained the report, not the oblivious consumer.

Here, Capital One is the party with peculiar knowledge as to why it obtained Nayab's credit report on multiple occasions. Nayab on the other hand has no idea why Capital One obtained her credit report. Nayab cannot possibly know why her credit report was obtained without probing into Capital One's state of mind or

internal records for that matter. Therefore, Capital One must bear this burden.

In looking at the big picture, there are generally three parties to a consumer report transaction. The user of the credit report (Capital One), the consumer (Nayab), and the credit reporting agency (here Experian). ER 80. In order to request consumer reports on a regular basis, the user need only provide a periodic general certification to the credit reporting agency which essentially declares that it has a permissible purpose each time it requests a consumer report. Hence, the credit reporting agency is at liberty, not to mention financially driven, to provide any consumer report the user requests.

As a result of this information asymmetry, the user of the report is the only party who truly knows the purpose behind requesting a consumer report. Of course, the credit reporting agency does provide the consumer with an inquiry notation that indicates their report was obtained by a particular user on a particular date; however, the credit reporting agency does *not* provide the user's purpose behind obtaining the consumer's report.

By strategically using a motion to dismiss, users, like Capital One, will prevent consumers, like Nayab, from sufficiently alleging a section 1681b(f) claim. This subversion of the FCRA will allow offenders to procure consumer reports with impunity. The only way to prevent this is to place the burden where it belongs— upon the user of the report.

**C.      Nayab's FAC Sufficiently Alleged An Impermissible Purpose**

Capital One contends that Nayab failed to sufficiently allege an impermissible purpose.  Capital One states that the "crux of Nayab's allegation of an impermissible purpose is that Nayab did not have a prior business relationship with Capital One." AB 40.

Contrary to Capital One's assertion, Nayab alleged more than the lack of a prior business relationship.  The FAC specifically mentions that Capital One had no permissible purpose to obtain her credit report under section 1681b(a) which incorporates section 1681b(c). ER 81-82.  Hence, even if Nayab must negative the exceptions to 1681b(f), Nayab's FAC has sufficiently done so.

Capital One's citation to a string of district court cases in which the courts have dismissed a complaint for failure to state a claim is, yet again, big on sound bites but thin on legal analysis.

First, these district court cases are not binding on this court.  Second, none of these district court cases have properly examined who bears the burden of proving the exception to the statute's general prohibition.  Third, these cases involved debt collectors who obtained the consumer's credit report in order to collect a debt, which is a permissible purpose under section 1681b(a)(3)(A).  Finally, that the plaintiffs were pro se litigants in these cases made the issue of burden susceptible to oversight.

To the extent this Court concludes that Nayab did not sufficiently allege that

Capital One did not have a permissible purpose to obtain her credit report under section 1681b(c), Nayab should be given leave to amend her FAC.

## III. CONCLUSION

For the reasons stated above and in Nayab's opening brief, the Judgment should be REVERSED and the case be remanded.

Respectfully submitted,

Dated: June 1, 2018                **MASHIRI LAW FIRM**
A Professional Corporation

By: <u>s/ Alex Asil Mashiri</u>
Alex Asil Mashiri, Esq.

Dated: June 1, 2018                **THE JAMI LAW FIRM, APC**

By: <u>/s/ Tamim Jami</u>
Tamim Jami, Esq.

-30-

## IV.    CERTIFICATE OF COMPLIANCE

I Certify pursuant to Fed. R. App. P. 32a(7)(B) and Ninth Circuit Rule 32-1 that Plaintiff-Appellant Freshta Nayab's Reply Brief complies with Fed. R. App. P. 32(a)(5)-(7) as it is proportionally spaced, has a typeface of 14 points, and contains 6993 words including footnotes based on Microsoft Word's word count system.  The portions excluded from the word count is section IV as well as the portions exempted by Fed. R. App. P. 32(f).

Dated:  June 1, 2018                          **MASHIRI LAW FIRM**
                                              A Professional Corporation

                                              By: /s/ Alex Asil Mashiri
                                              Alex Asil Mashiri, Esq.

9th Circuit Case Number(s) 17-55944

**NOTE:** To secure your input, you should print the filled-in form to PDF (File > Print > *PDF Printer/Creator*).

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE
### When All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) 06-01-18 .

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature (use "s/" format) /s Alex Asil Mashiri

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE
### When Not All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) .

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

Signature (use "s/" format)